IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LUCAS PARRISH; MELINA PARRISH, Individually and as *prochien ami* for minor Children E.L.P., born in 2002; and E.D.P., born in 2002, <br><br> Plaintiffs, <br> vs. <br><br> JCI JONES CHEMICALS, INC., a for profit New York Corporation; JOHN DOES 1–10; DOE CORPORATIONS 1–10; DOE PARTNERSHIPS 1–10; and DOE ENTITIES 1–10, <br><br> Defendants. | CIVIL NO. 17-00518 JAO-RLP <br><br> **ORDER GRANTING DEFENDANT JCI JONES CHEMICALS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING DEFENDANT JCI JONES CHEMICALS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Defendant JCI Jones Chemicals, Inc.'s Motion for

Judgment on the Pleadings filed October 15, 2018. Doc. No. 62. Plaintiffs Lucas

and Melina Parrish filed their response and opposition on January 25, 2019. Doc.

No. 100. The Motion was heard on February 15, 2019. For the reasons set forth

below, the Court GRANTS Defendant's Motion.

## I. BACKGROUND

### A. Facts

This action arises from Plaintiff Lucas Parrish's alleged exposure to

hazardous chemicals at a Hilo facility run by his employer, BEI Hawaii.  Doc. No.

1, Ex. A at ¶¶ 26–34.  In and prior to September 2016, Defendant supplied chlorine

cylinders and salvage vessels to the BEI Hawaii facility.  *Id.* at ¶ 23−24.  On

September 22, 2016, a leak was discovered in one of the chlorine cylinders.  *Id.* at

¶ 26.  The cylinder was placed in a salvage vessel, but the salvage vessel also had a

leak.  *Id.* at ¶ 27–28.  Hazardous materials personnel employed by the County of

Hawaiʻi and State of Hawaiʻi responded to the leak and instructed the facility to

place the salvage vessel and cylinder in a tub of water.  *Id*. at ¶ 29.  On the morning

of September 23, 2016, more chlorine leaked from the cylinder than what the water

could absorb, and high levels of chlorine entered the facility's environment.  *Id.* at

¶ 33.  Plaintiff Lucas Parrish arrived at work that morning and was exposed to high

amounts of chlorine gas, which he alleges severely and permanently damaged his

lungs.  *Id.* ¶ 34.

**B.     Procedural History**

On August 22, 2017, Plaintiffs initiated this action in the Circuit Court of the

Third Circuit, State of Hawaiʻi, asserting negligence (Count I) and strict liability

(Count II) claims against Defendant.  Doc. No. 1, Ex. A.  Defendant removed the

action on the basis of diversity jurisdiction on October 13, 2017.  In its answer,

Defendant alleges that the Hazardous Materials Transportation Act ("HMTA"), 49

U.S.C. § 5101–5128, and the Hazardous Materials Regulations ("HMR"), 49

C.F.R. Parts 171–179, preempted Plaintiffs' state-law claims. *Id.* at ¶ 67.

On October 15, 2018, Defendant filed the instant Motion. Doc. No. 62. Magistrate Judge Puglisi granted in part Plaintiffs' request to file an amended complaint, Doc. No. 77, and Plaintiffs filed an Amended Complaint on November 26, 2018, Doc. No. 80. Defendant thereafter filed its Answer, again asserting that Plaintiffs' claims were preempted by the HMTA and HMR. Doc. No. 85 at ¶ 68.

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Accordingly, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997) (citing *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996)).

As with a motion to dismiss, a claim may survive a motion for judgment on the pleadings if the complaint "contain[s] sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Facial plausibility exists "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a court

must accept as true all allegations contained in the complaint, this obligation does

not extend to legal conclusions.  *Id.*  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*,

550 U.S. at 557).  "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it

has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed.

Sprewell, 266 F.3dR. Civ. P. 8(a)(2)) (some alterations in original).

Under Rule 12(b)(6), review is ordinarily limited to the contents of the

complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell v.*

*Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v.*

*Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  A 12(b)(6) motion is treated as a

motion for summary judgment if matters outside the pleadings are considered.

*Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

To determine whether Plaintiffs' claims are preempted by the HMTA and

HMR, the Court must determine whether the claims fall within the domain of

§ 5125(b)(1), the HMTA's express preemption clause. *See Roth v. Norfalco LLC*,

651 F.3d 367, 376 (3d Cir. 2011). To do this, the Court must first analyze the text

of the preemption clause and determine its scope. *Id.* Next, the Court must

"identify the contours of the non-federal law, regulation, order, or requirement at

issue in the case." *Id*. The Court "must [then] ascertain (1) whether § 5125(b)(1)

applies to the non-federal law, regulation, order, or requirement [] identified, and

(2) whether the non-federal requirement is 'substantively the same as' the

conditions imposed by federal hazardous materials law." *Id*. If the non-federal

requirement is substantively the same as the federal law, then the claims are not

preempted. *See id.*

## III.   DISCUSSION

Defendant moves for judgment on the pleadings, arguing that the state-law

duties that Plaintiffs seek to impose on Defendant are expressly preempted by the

HMTA. Plaintiffs oppose the Motion, arguing that (1) the requirements at issue

are beyond the HMTA's domain, (2) the state-law requirements Plaintiffs seek to

impose on Defendant are substantially the same as the HMTA's requirements, and

(3) the HMTA does not extend to "end users" such as Mr. Parrish.

## A.  Express Preemption

Defendant argues that the HMTA's preemption provision expressly preempts the imposition of state-law duties related to the packaging, distribution, handling, transporting and labeling of chlorine.  Plaintiffs argue that the duties at issue in their Amended Complaint are beyond the HMTA's domain.

The Supremacy Clause of the United States Constitution states that the Constitution, the laws of the United States, and all Treaties "shall be the supreme Law of the Land." Art. VI cl. 2.  Under the Supremacy Clause, "state laws that interfere with, or are contrary to the laws of [C]ongress, made in pursuance to the [C]onstitution are invalid." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (internal citation omitted).  "Federal preemption may be express or implied." *Donell v. Kowell*, 533 F.3d 762, 775 (9th Cir. 2008).  When Congress has included a provision explicitly addressing preemption, the preemptive scope of the statute "is governed entirely by the express language." *Congress Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992).

A court must analyze the language of an express preemption provision to "identify the domain expressly pre-empted" by the provision. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (internal quotation omitted).  Assessment of an express preemption provision's domain "must begin with its text . . . . [T]hat interpretation is informed by two presumptions about the nature of pre-emption."

*Id*. at 484–85. The first presumption is that "the purpose of Congress is the ultimate touchstone in every pre-emption case," and the second is that "the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal citation and quotation omitted). However, "[w]here the intent of a statutory provision that speaks expressly to the question of preemption is at issue, [courts] do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Atay v. Cty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (internal quotation omitted).

The HMTA contains an express preemption clause, which addresses, among other matters, the packaging, handling, and transporting of hazardous material:

> **(1)** Except as provided in subsection (c) of this section and unless authorized by another law of the United States, a law, regulation, order, or other *requirement of a State . . . about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted*:
>
> > **(A)** the designation, description, and classification of hazardous material.
> >
> > **(B)** the *packing, repacking, handling, labeling, marking*, and placarding of hazardous material.
> >
> > **(C)** the preparation, execution, and use of shipping

documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

**(D)** the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident.

**(E)** *the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container*, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

46 U.S.C.A. § 5125 (emphasis added).  Section 5102 defines "transports" or "transportation" as "the movement of property and loading, unloading, or *storage incidental to the movement*."  49 U.S.C.A. § 5102 (emphasis added).

The Third Circuit analyzed this language and determined the scope of § 5125(b)(1) in *Roth v. Norfalco LLC*.  The *Roth* court confirmed what the text of § 5125(b)(1) makes plain: "the HMTA preempts state common law claims that, if successful, would impose design requirements upon a package or container qualified for use in transporting hazardous materials in commerce."  651 F.3d at 379.  The court explained that § 5125(b)(1)(E) "concerns the 'design[]' of a 'package, container, or packaging component that is . . . qualified for use in transporting hazardous materials in commerce.'"  *Id.* (quoting 42 U.S.C. § 5125(b)(1)); *see Chlorine Inst., Inc. v. California Highway Patrol*, 29 F.3d 495,

494 (9th Cir. 1994) (identifying the HMTA as "a uniform, national scheme of

regulation regarding the transportation of hazardous materials").

Having considered the scope of § 5125(b)(1), the Court must next identify

the non-federal requirements at issue in this case.  *Id.* at 376.  Plaintiff asserts

negligence claims under Hawaiʻi state law.  In pertinent part, Plaintiff alleges:

> 17. Defendant JCI has and has [sic] assumed the duty of
> "Responsible Care" regarding the use of chlorine it sells to its
> customers and distributors.
>
> 18. The duty of Responsible Care include [sic] the duty to audit
> and prescreen customers and distributors for competence in the
> safe *handling* of chlorine gas, offering and providing education
> and training to customers and distributors who are not prepared
> to reliably *handle* chlorine in a safe manner, and enforcing
> safety standards with customers and distributors who do not
> become competent in safe *handling* of chlorine by refusing to
> sell chlorine to them.
>
> …
>
> 22. BEI never conducted a prescreening or audit of BEI to
> determine whether BEI was competent to safely *handle*
> chlorine.  In and prior to September 2016, JCI supplied salvage
> vessels to customer BEI, located in Hilo, Hawaii for use in
> containing chlorine leaks from cylinders.
>
> …
>
> 30. JCI has a duty to use reasonable care to *inspect and test the
> chlorine cylinders* it supplies to its customers, before it supplies
> them, *in order to make sure they will not leak chlorine*.
>
> 31. JCI has a duty to use reasonable care to *inspect and test
> salvage vessels* it supplies to its customers, before it supplies
> them, *in order to make sure they will contain chlorine that*

*leaks from a cylinder placed inside of the salvage vessel.*

…

47. *The subject chlorine cylinder was defective* in that it failed to contain chlorine gas against leaking out of the cylinder and into the environment.

48. *The subject chlorine cylinder was defective* in that the valve fuse plug was damaged, improperly installed, missing or otherwise in such condition as would allow chlorine gas contained within the cylinder to leak into the environment.

49. *The subject salvage vessel was defective* in that it failed to contain chlorine gas that leaked from the subject leaking cylinder that was placed inside of it.

50. *The salvage vessel was defective* in that chlorine gas was able to escape the vessel through a breach in the vessel wall.

51. *The chlorine cylinder and salvage vessel were defective* in that *they lacked sufficient warnings and instructions* regarding leaking chlorine.

…

53. *The subject chlorine cylinder and salvage vessel were dangerously defective* when used in their intended or reasonably foreseeable use, including such uses as are described above at the BEI facility.

Compl. at ¶¶ 17–18, 22, 30–31, 47–51, 53 (emphasis added).

According to the Amended Complaint, Plaintiffs seek to impose the following non-federal requirements on Defendants: (1) the duty to prescreen customers and distributors for competence in the safe handling of chlorine gas, (2) the duty to offer and provide education and training to chlorine customers and

distributors, (3) the duty to inspect and test chlorine cylinders before supplying

them to customers, (4) the duty to inspect and test salvage vessels, and (5) the duty

to label the chlorine cylinders and salvage vessels with warnings about leaking

chlorine. Compl. at ¶¶ 18, 30–31, 51. Having identified the non-federal

requirements at issue in the case, the Court must next determine

whether § 5125(b)(1) applies to these requirements. *Roth*, 651 F.3d at 376.

The duty to inspect and test chlorine cylinders and salvage vessels relates to

Defendant's "designing, manufacturing, fabricating, inspecting, marking,

maintaining, reconditioning, repairing, or testing" of "packaging component[s]"

used in the transporting of chlorine.[1] *See* 46 U.S.C.A. § 5125(b)(1)(E). Section

5125(b)(1) also applies to Defendant's supposed obligation to prescreen customers

for competence and provide education regarding the handling and maintenance of

chlorine. *See* 46 U.S.C.A. § 5125(b)(1)(B), (E). Similarly, the HMTA addresses

the labeling and marking of hazardous materials and therefore covers the adequacy

of Defendant's warnings. *See* 46 U.S.C.A. § 5125(b)(1)(B). Section

5125(b)(1) clearly applies to the non-federal duties Plaintiffs seek to impose on

Defendants as part of their maintaining and manufacturing of hazardous materials.

**B.     Substantively the Same**

Next, the Court must determine whether the non-federal requirements are

---

[1]  There is no dispute that chlorine is a "hazardous material." 49 C.F.R. § 172.101.

'substantively the same as' the conditions imposed by federal hazardous materials law. *Roth*, 651 F.3d at 376. Plaintiffs argue that to the extent that their claims implicate the HMTA, their claims would impose substantially the same requirements on Defendant as the HMTA. Defendant argues that the requirements Plaintiffs' Amended Complaint would impose, as pleaded, are not the same.

A state requirement is "substantively the same" as the federal requirement—and thus immune to preemption—when it "conforms in every significant respect to the Federal requirement." 49 C.F.R. § 107.202(d). "To state a parallel claim, a plaintiff must allege the violation of a specific federal requirement applicable . . . and the violation of an identical state law duty." *Martin v. Medtronic, Inc.*, 2017 WL 825410, at *4 (E.D. Cal. Feb. 24, 2017) (citing *Wolicki-Gables v. Arrow International, Inc.*, 634 F.3d 1296, 1300-01 (11th Cir. 2011)).

Plaintiffs do not allege that Defendant violated any federal law. The Amended Complaint does not mention the HMTA or HMR. Plaintiffs' claims are therefore not pleaded with the specificity required for a parallel claim. In addition, imposing tort liability on Defendant would not be "substantively the same as" the federal law requirements. The HMTA requires that the law be violated "knowingly" or "willfully or recklessly," a higher *mens rea* standard than that required of negligence and strict liability claims. 49 U.S.C. § 5123(a), § 5124(a). Accordingly, the requirements Plaintiffs' Amended Complaint would impose are

not substantially the same as those imposed by the HMTA.

Thus, Plaintiffs' negligence and strict liability claims are expressly preempted by the HMTA. *See Mawa Inc. v. Univar USA Inc.*, No. CV 15-6025, 2016 WL 2910084, at *5 (E.D. Pa. May 19, 2016) (finding preemption when plaintiff sought to impose on [defendant] a specific set of handling, testing, maintaining, and labeling requirements beyond those imposed by the HMTA/HMR); *see also Roth*, 651 F.3d at 376; *Colorado Public Utilities Com'n v. Harmon*, 951 F.2d 1571, 1581–83 (10th Cir. 1991) (finding state permit requirements for shipment of nuclear materials preempted because they "clearly exceed the information and documentation requirements set forth in [the HMR]"); *Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community*, 991 F.2d 458, 461–62 (8th Cir.1993) (finding licensing and pre-notification requirements for transportation of nuclear materials preempted because they "greatly exceed the federal provisions and create the exact inconsistency the [federal hazardous material law] intends to prevent").

## C.    End User

Plaintiffs argue that the HMTA only covers the regulation of hazardous materials while they are in transport, and therefore the HMTA no longer controlled once Mr. Parrish's employer received the chlorine cylinder from Defendant. Defendant argues that there is no such "end user" exception to the HMTA, and

even if there was, Mr. Parrish was not an "end user."

The plaintiff in *Roth* similarly argued that his common law claims were outside the HMTA's preemptive scope because he was injured after delivery of the hazardous material. The court rejected this argument, pointing to its inherent illogic and the plain language of the HMTA. *Roth*, 651 F.3d at 380 (quoting 42 U.S.C. § 5125(b)(1)). The court held:

> "[T]he HMTA plainly encompasses Roth's common law claims. It is irrelevant what Roth was doing at the precise moment of his injury. This only makes sense, for it cannot be the case that the comprehensive design requirements erected by the HMTA cease to govern simply because the tank car was emptied of its contents days after its delivery. The tank car is, at all times, *a container qualified for use in transporting hazardous materials*. The proposed design requirement is expressly preempted."

*Id.* at 378 (emphasis added); *see also Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders*, 77 FR 39567-01 ("[T]he 'substantively the same as' preemption provision in 49 U.S.C. 5125(b)(1)(E) must govern the adequacy of the cylinder at all times that it is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce, and not just the period in time when it was used to transport hazardous material." (some quotations omitted)).

As in *Roth*, what is relevant here is not whether the chlorine was literally in transport, but rather whether Plaintiffs seek to impose requirements on devices

14

*used in transporting* hazardous materials.  Indeed, Plaintiffs seek to mandate new state-law conditions on Defendant's maintenance and handling of cylinders, valves, and salvage vessels used in the transportation of hazardous materials. Therefore, Plaintiffs' claims are preempted by federal law regardless of what Mr. Parrish was doing at the time of the injury.

Plaintiffs have failed to identify any binding authority recognizing an end user exception in the HMTA.  Even if the Court found such an exception in the HMTA, Plaintiffs have not pleaded facts to support an inference that Parrish was an end user.  The Amended Complaint does not indicate how long the chlorine cylinder and salvage vessel had been at the facility, or whether the chlorine had reached its final destination.  Although Plaintiffs could have anticipated Defendant's federal preemption defense, which Defendant asserted in its Answer, Doc. No. 12 at ¶ 67, Plaintiffs did not seek leave to amend their Amended Complaint to address the HMTA.  It is not the Court's duty to fill in unalleged facts to support Plaintiff's claim. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 959 (9th Cir. 2002) (finding that once plaintiffs were on notice that their claims were preempted, it was their burden to amend their complaint to survive defendant's motion to dismiss).  A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  The Court therefore rejects Plaintiffs' "end user" argument.

15

## IV.    CONCLUSION

In accordance with the foregoing, the Court GRANTS Defendant's Motion because Plaintiffs' negligence and strict liability claims are expressly preempted by the HMTA and HMR.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 27, 2019.



  /s/   Jill A. Otake_____
Jill A. Otake
United States District Judge

Civil No. 17-00518 JAO-RLP; *Parrish v. JCI Jones Chemicals*; ORDER GRANTING DEFENDANT JCI JONES CHEMICALS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS